United States District Court
Southern District of Texas
**ENTERED**
August 30, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| AROLDO HUMBERTO CADRIEL, | § | |
| Petitioner, | § | |
| | § | Lead Case: |
| v. | § | **Civil Action No. 1:18-cv-080** |
| | § | |
| BOBBY LUMPKIN, Director, Texas | § | Member Case: |
| Department of Criminal Justice, | § | **Civil Action No. 1:20-cv-188** |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Aroldo Humberto Cadriel's "Petition for Relief From a Conviction or Sentence By a Person in State Custody," (hereinafter, Cadriel's "Amended § 2254 Petition" or "Amended Petition"), and supporting documents. Dkt. No. 76;[1] Dkt. No. 76-1; Dkt. No. 78. The Court is also in receipt of Director Lumpkin's "Motion for Summary Judgement with Brief in Support" (hereinafter, Lumpkin's "Motion for Summary Judgment" or "Motion"). Dkt. No. 88. For the reasons provided below, it is recommended that: (1) Lumpkin's Motion be **GRANTED**; (2) the Court **DECLINE** to issue a certificate of appealability; and (3) the Clerk of Court be **DIRECTED** to **CLOSE** this Civil Action (hereinafter, "Civil Action No. 1:18-cv-080," or the "Lead Case"), and Civil Action No. 1:20-cv-188 (hereinafter, "Civil Action No. 1:20-cv-188," or the "Member Case").

---

[1] Unless explicitly noted otherwise, all docket entry references are references to Civil Action No. 1:18-cv-080.

## I. Jurisdiction

The Court has jurisdiction over the claims and parties pursuant to 28 U.S.C. §§ 2241 and 2254, which provide that jurisdiction is proper where the incarcerated petitioner is confined or where his state conviction was obtained. *See* 28 U.S.C. § 124(b)(5); *Wadsworth v. Johnson*, 235 F.3d 959, 961–62 (5th Cir. 2000) (same).

## II. Background and Procedural History

On December 13, 2013, in the 404th Judicial District Court of Cameron County, Texas, a jury found Aroldo Humberto Cadriel guilty of murder in violation of § 19.02 of the Texas Penal Code and assessed a punishment of life imprisonment. Dkt. No. 11-10 at 36, 41, 47-48. Nathaniel "Nat" C. Perez, Jr., represented Cadriel at trial. Dkt. No. 11-52 at 90-102; Dkt. No. 86-8 at 116. The trial court entered judgment on December 18, 2013. Dkt. No. 11-10 at 47-49.

The Texas Thirteenth Court of Appeals (the "appellate court") affirmed Cadriel's conviction on September 24, 2015. Dkt. No. 11-3. The appellate court found that:

1. The trial court did not err in declining to disqualify the district attorney;

2. The trial court adequately conducted an informal inquiry into Cadriel's competence;

3. The trial court did not err in denying Cadriel's motion to suppress;

4. Perez did not preserve the issue concerning the admissibility of the testimony of the State's ballistics expert, Richard Hitchcox, for appeal;

5. Of the two alleged violations of the order in limine, the first was not a violation and the second did not warrant a mistrial; and

      6.   With respect to the lost video recording of Alicia Mireles's interview, Cadriel did not show that the video had exculpatory value, nor did he show bad faith on behalf of the State.

Dkt. No. 11-3.

On October 7, 2015, Cadriel filed a motion for a rehearing before the appellate court, but the appellate court denied his motion on October 19, 2015.  Dkt. No. 11-4*; Cadriel v. State*, No. 13-14-00137-CR, 2015 WL 5634421 (Tex. App.—Corpus Christi–Edinburg Sept. 24, 2015, pet. ref'd) (mem. op., not designated for publication).  Cadriel filed a petition for discretionary review with the Texas Court of Criminal Appeals ("TCCA"), but the TCCA denied his petition without written opinion on February 3, 2016.  Dkt. No. 11-8.

On January 12, 2017, through counsel, Cadriel filed a state habeas application in the 404th Judicial District Court of Cameron County, Texas (hereinafter the "state habeas trial court") pursuant to Article 11.07 of the Texas Code of Criminal Procedure.[2]  Dkt. No. 11-52 at 3-4, 18.  Cadriel also filed two pro se applications.  *Id.* at 3, 87.  In a memorandum and order dated March 21, 2017, the trial court stated that it would treat these as "supplemental writs to the original application[.]"  *Id.*  The trial court also stated that, going forward, Cadriel must only file his submissions through his counsel because he was not entitled to hybrid representation.  *Id.* at 87.

Cadriel's habeas proceedings subsequently became jumbled due to mistakes on the part of various individuals.  On February 28, 2018, the TCCA denied Cadriel's state habeas application despite the fact that his habeas proceedings were still ongoing in the trial

---

[2] *See* TEX. CODE. CRIM. P. ART. 11.07.

court.  Dkt. No. 86-5; Dkt. No. 86-9 at 174-75, 180-81.  The TCCA did not know that the trial court had held an evidentiary hearing and had a second evidentiary hearing set for June 1, 2018.  Dkt. No. 86-9 at 180-81.  The TCCA found Cadriel did not know the habeas record had been transmitted to the TCCA with signed findings.  *Id.*  The trial court did not notify Cadriel of the TCCA's initial denial.  Dkt. No. 86-5 at 2.  Cadriel filed a "Suggestion to Reopen Case on the Court's Own Motion" on May 24, 2018.  Dkt. No. 86-4.

The TCCA reopened the case on February 6, 2019.  Dkt. No. 86-9 at 180-81.  The state habeas trial court held a second evidentiary hearing on April 15, 2019 (the "2019 Evidentiary Hearing"), almost two years after it held the first evidentiary hearing on September 13, 2017.  *Id.* at 174.  On March 13, 2020, the court entered its final "Findings of Fact, Conclusions of Law, Recommendation and Order," in which it recommended that the TCCA deny Cadriel's habeas claims.  *Id.* at 178.  Specifically, the state habeas trial court entered the following findings:

1. Cadriel did not show that Perez provided ineffective assistance;

2. Cadriel did not show that Perez failed to perform an inadequate investigation, call material witnesses, hire a ballistics expert, or object to the State's evidence or arguments;

3. Cadriel failed to show that, but for Perez's deficient conduct, there was a reasonable probability that the result of his trial would have been different;

4. Cadriel did not produce competent evidence of his incompetence, nor did he show that there was a reasonable basis to have his competence examined;

5. The appellate court rejected Cadriel's habeas claims when they were raised on direct appeal, and the claims could not be relitigated; and

6. Cadriel did not provide evidence to support his claim of actual innocence, and the record as a whole also failed to support this claim.

Dkt. No. 86-9 at 177-78. The TCCA adopted the state habeas trial court's findings without written order on September 30, 2020. Dkt. No. 74-4.

On May 19, 2018, Cadriel filed a pro se § 2254 petition in the Brownsville Division of the United States District Court for the Southern District of Texas, initiating Civil Action No. 1:18-cv-080. Dkt. No. 1-1.[3] Cadriel filed this petition after the TCCA prematurely closed his state habeas proceeding, but before the TCCA reopened the case. Dkt. No. 86-9 at 174, 180-81. This Court stayed Civil Action No. 1:18-cv-080 while Cadriel's state habeas proceeding was ongoing. Dkt. No. 20. On October 7, 2020, the Court lifted the stay and granted Cadriel's pro se motion to file an amended § 2254 petition. Dkt. No. 66. The Court ordered Cadriel to file his Amended Petition by November 16, 2020. *Id.*

On October 22, 2020, Cadriel filed another § 2254 petition through counsel in the Houston Division of the United States District Court for the Southern District of Texas. *Cadriel v. Lumpkin*, Civil Case No. 4:20-cv-3632, Dkt. No. 1. The Houston Division transferred Cadriel's petition to this Division, where it was docketed as Civil Action No. 1:20-cv-188. *Id.*; Dkt. No. 4. On November 16, 2020, in Civil Action No. 1:18-cv-080, Cadriel's counsel filed a Motion to Take Judicial Notice of Pleading as Amended Petition. Dkt. No. 74. In this motion, Cadriel's counsel asked that Cadriel's § 2254 petition in Civil Action No. 1:20-cv-188 be refiled in his Lead Case as the amended § 2254 petition due by

---

[3] Cadriel's envelope is postmarked May 19, 2018, and the Court applies the mailbox rule. *See Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (discussing the mailbox rule and noting that, for statute of limitations purposes, a pro se prisoner's petition is filed on the day it is placed in the prison mailing system.).

November 16, 2020.  *Id.*  The Court granted Cadriel's motion and consolidated the two civil actions.  Dkt. No. 75; Dkt. No. 76.  Cadriel filed a Memorandum of Law in Support of Petition for Relief Under 28 U.S.C. § 2254 (hereinafter, "Memorandum of Law") on November 23, 2020.  Dkt. No. 78.

In his Amended § 2254 Petition and supporting Appendix, Cadriel raises ten grounds for relief.  Dkt. No. 76-1.  Specifically, he asserts the following:

1. Perez provided ineffective assistance by failing to secure a ballistics expert for trial or contesting the reliability of the field;

2. Perez provided ineffective assistance by failing to adequately investigate the inventory reports from the search of his home;

3. Perez provided ineffective assistance by failing to secure an adequate judicial inquiry into Cadriel's competence;

4. Perez provided ineffective assistance by failing to provide the trial court with an adequate explanation for Cadriel's decision to forego experts;

5. Perez provided ineffective assistance by failing to conduct an adequate investigation into the underlying facts of the murder;

6. Cadriel is actually innocent;

7. The State engaged in prosecutorial misconduct by bolstering witnesses in its closing argument;

8. Law enforcement used unreasonable force in the search of his home;

9. Law enforcement used unreasonable force in the seizure of his person; and

10. Law enforcement failed to inform him of his *Miranda* rights.

Dkt. No. 76-1; Dkt. No. 78.

On March 24, 2021, Lumpkin filed a Motion for Summary Judgment on all of Cadriel's claims. In his motion, Lumpkin argues that Cadriel's ineffective assistance claims lack merit, that the Court must treat the TCCA's disposition of these claims with a high degree of deference, and that Cadriel has not shown that the TCCA's findings should be reversed.  Dkt. No. 88 at 18-20 (citing *Harrington v. Richter*, 562 U.S. 86, 105 (2011) for the proposition that the standard is "doubly" deferential out of deference to both the trial counsel and the state court).

In response to Cadriel's ineffective assistance claims, Lumpkin argues that:

1.  Cadriel fails to supply evidence showing that Perez prejudiced him by neglecting to hire a ballistics expert.  Cadriel neither identifies such a supporting expert  nor shows how Perez's conduct was unreasonable.  Further, Perez contacted a potential expert, but found that his testimony would damage Cadriel's case.

2.  Cadriel fails to show that Perez prejudiced him by conducting an inadequate investigation into the police inventory sheets.  Specifically, Cadriel alleges the existence of various discrepancies between the handwritten and typed inventory lists of items seized from his residence, including a serial number of a Smith and Wesson gun that appears on the typed list, but not on the handwritten list. However, Cadriel's argument that Perez's failure to use these discrepancies to challenge the chain of custody of the gun constitutes ineffective assistance is conclusory.  Moreover, the state habeas court determined—in written findings the TCCA adopted—that Cadriel failed to demonstrate how these alleged failures denied him a fair trial.  Insofar as the TCCA's rejection of this claim was a ruling on the underlying state law, this determination cannot be revisited in a federal habeas proceeding.  Finally, under 28 U.S.C.  § 2254(e), the TCCA's credibility

determination in favor of Perez is presumptively correct and may only be overcome by clear and convincing evidence.

3. Cadriel fails to show he was incompetent to stand trial. He also fails to demonstrate that Perez acted unreasonably in choosing to forego an investigation into his mental capacity.

4. In making the same argument in support of his third and fourth claims, Lumpkin asserts that Cadriel fails to show he was incompetent to stand trial. He also fails to demonstrate that Perez acted unreasonably in choosing to forego an investigation into his mental capacity.

5. Cadriel's allegations concerning Perez's inadequate investigation are conclusory. Cadriel fails to show how Perez could have proven that Cadriel did not possess a cell phone at the time of the offense in light of Cadriel's son's testimony; fails to show how Perez could have elicited favorable testimony from the hotel manager witness; and fails to show how potential family member testimony that Cadriel did not own a firearm fitting a description of the murder weapon would have affected the trial outcome.

Dkt. No. 88 at 18-38.

Regarding Cadriel's actual innocence claim, Lumpkin asserts that actual innocence is not a recognized ground for habeas corpus in the Fifth Circuit. *Id.* at 39 (citing *Dowthitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000); *Graham v. Johnson*, 168 F.3d 762, 788 (5th Cir. 1999); *Lucas v. Johnson*, 132 F.3d 1069, 1075 (5th Cir. 1998); *Jacobs v. Scott*, 31 F.3d 1319, 1324-25 (5th Cir. 1994)). This claim is, therefore, not a cognizable § 2254 claim. Dkt. No. 88 at 39.

Lumpkin further contends that Cadriel's allegations of prosecutorial misconduct must fail.  He states that, to constitute actionable misconduct, the prosecutor's statements must so infect the trial with unfairness as to deny the defendant due process.  Dkt. No. 88 at 40 (citing *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).  In Cadriel's case, he asserts that the prosecutor's statements that Cadriel was a "monster" and "the face of pure evil" were not so egregious as to violate Cadriel's due process rights.  *Id.* at 39-40.

Lumpkin also contends that Cadriel's claims that law enforcement used unreasonable force in the search of his home and unreasonable force in the seizure of his person are not cognizable under *Stone v. Powell*.  *Id.* at 41-42 (citing *Stone v. Powell*, 428 U.S. 465, 494 (1976).  Finally, he contends Cadriel's *Miranda* claim is conclusory and therefore subject to summary dismissal.  *Id.* at 42.

On April 15, 2021, Cadriel filed a response in which he reasserts  the arguments concerning allegedly ineffective assistance.  Dkt. No. 89.  Cadriel claims Perez should have hired experts for the defense and insufficiently investigated the underlying facts and the inventory sheets.  *Id.*  Lumpkin did not file a reply.

### III.  Legal Standards

#### A.  28 U.S.C. § 2254

The applicable provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA")[4] govern petitions brought under 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 335-336 (1997).  Pursuant to the AEDPA, a federal court may not grant habeas relief based upon a claim that was adjudicated on the merits by a state court unless the petitioner demonstrates that the state court's decision: (1) "was contrary to, or involved

---

[4] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *See also Harrington*, 562 U.S. at 97–98 (same).  "This standard is difficult to meet but 'stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.'"  *Auvenshine v. Davis*, No. 4:17-CV-294-Y, 2018 WL 2064704, at *2 (N.D. Tex., May 3, 2018) (citing *Harrington,* 562 U.S. at 102).

The "AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (internal quotations omitted).  Even when there is no explanation, a "habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief[.]"  *Williams v. Thaler*, 684 F.3d 597, 603 (5th Cir. 2012).  With respect to questions of fact, the state court's factual determinations are presumed correct unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  The evidence must also be limited to that which was presented to the ultimate state habeas court.  *Williams*, 684 F.3d at 603 ("limiting itself to the record that was before the Texas CCA at the time of its decision"); *but see* 28 U.S.C. § 2254(e)(2) (an exception to the bar).

A petitioner must fully exhaust state remedies before seeking federal habeas relief. *See* U.S.C. Section 2254(b).  However, habeas applications "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. Section 2254(b)(2); *Strickland v. Thaler*, 701 F.3d 171, 174 (5th Cir. 2012).  "While a district court should dismiss an entire federal habeas application if the petitioner's state remedies have not been exhausted as to all claims raised in the

federal petition, because exhaustion is based on comity rather than jurisdiction, there is no absolute bar to federal consideration of unexhausted habeas applications." *Strickland*, 701 F.3d at 174 (internal citation and quotation marks omitted).  A federal district court may deny relief on the merits of an unexhausted claim so long as the claim obviously lacks merit or it is perfectly clear that the applicant does not raise even a colorable federal claim. *Mercadel v. Cain*, 179 F.3d 271, 276 (5th Cir. 1999);  Federal Habeas Manual § 9C:58.

With respect to questions of law, or mixed questions of law and fact adjudicated on the merits in state court, the petitioner must either demonstrate that the state court decision "was contrary to" clearly established Supreme Court precedent, or "involved an unreasonable application of" that precedent.  *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  Pursuant to the "contrary to" clause, district courts may only grant habeas relief if "'the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.'"  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  Pursuant to the "unreasonable application" clause, district courts may only grant relief: (1) when a state court decision "identifies the correct governing legal rule from [the Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case[,]" or (2) when the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407.

### B.   Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 sets forth the summary judgment standard.  In pertinent part, Rule 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same).  Mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases."  *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), *cert. denied*, 531 U.S. 831 (2000).  District courts considering motions for summary judgment in ordinary civil cases are required to construe the facts in the case in the light most favorable to the nonmoving party.  *See Anderson*, 477 U.S. at 255.  Nevertheless, the application of Rule 56 in the federal habeas context differs from its application in "the average civil case."  *Torres v. Thaler*, 395 F. App'x 101, 106 (5th Cir. 2010) (citing *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *abrogated on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004)).  As the Fifth Circuit has explained:

> [T]he rule applies only to the extent that it does not conflict with the habeas rules. Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are "presumed to be correct"—overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the nonmoving party.

*Smith*, 311 F.3d at 668.

### C.  Ineffective Assistance of Counsel

The "Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against him.  *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citing *Montejo v. Louisiana*, 566 U.S. 778, 786 (2009)). Critical stages include not only trial, but also pretrial proceedings, including the plea-bargaining process.  *See Lafler v. Cooper*, 566 U.S. 156 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

In *Strickland v. Washington*, the Supreme Court held that in order to succeed on an ineffective assistance claim, a defendant must show both: (1) that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) "the deficient performance prejudiced the defense," and shows "errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Courts need not address both inquiries if the defendant does not sufficiently support one prong, nor must the court address the test in the same order.  *Id.* at 697.  Under this standard, the defendant must show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 687; *Williams*, 529 U.S. 362, 390–91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994).  A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance.  *See Strickland*, 466 U.S. at 687–91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000).

The sufficiency of counsel's representation may be determined, and indeed substantially influenced, by the defendant's own statements and actions.  *Strickland*, 466 U.S. at 691.  As stated by the Supreme Court, an attorney's actions are usually based on

information supplied by the defendant, and, for example, investigative decisions or potential lines of defense are followed based upon what the client said. *Id.* Counsel's conversations with the defendant may, then, be critical to properly assessing his actions during litigation. *Id.* A defendant establishes a violation of his Sixth Amendment rights when he shows that his counsel's performance was deficient, and that he suffered prejudice as a result. *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (citing *Strickland*, 466 U.S. at 687).

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Id.* Therefore, to establish prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 669.

A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams*, 529 U.S. at 391; *Strickland*, 466 U.S. at 694. The prejudice prong of *Strickland*, then, focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 393 n. 17; *Strickland*, 466 U.S. at 692.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under the test will

ordinarily make it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229–30 (5th Cir. 1987). It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992); *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

### D. Prosecutorial Misconduct

When a prosecutorial misconduct claim is raised in a habeas proceeding, the court must determine whether the alleged misconduct "so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (internal quotation marks omitted). The "appropriate standard of review for [a] prosecutorial misconduct claim on federal habeas corpus review is due process[.]" *Miller v. Whitley*, 1994 WL 121955 at *1 (5th Cir. 1994) (in a parenthetical of *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)).

"To constitute a due process violation, the prosecutorial misconduct must be of 'sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987). A trial is fundamentally unfair when "there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (quoting *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988)). "A prosecutor's improper [conduct] will, in itself, exceed constitutional limitations in only the most egregious

cases." *Ortega v. McCotter*, 808 F.2d 406, 410 (5th Cir. 1987) (quoting *Menzies v. Procunier*, 743 F.2d 281, 288–89 (5th Cir. 1984)).

## IV. Discussion

Cadriel asserts the following: (A) five ineffective claims; (B) an actual innocence claim; (C) a prosecutorial misconduct claim; (D) an unreasonable search claim; (E) an unreasonable seizure claim; and (F) a *Miranda* claim. Although the TCCA affirmed the state habeas trial court's denial of the five ineffective assistance claims and the actual innocence claim, the TCCA did not address the prosecutorial misconduct claim, unreasonable search claim, unreasonable seizure claim, or *Miranda* claim because Cadriel did not assert these claims in the state habeas proceeding. Nonetheless, in accordance with 28 U.S.C. Section 2254(b)(2) and *Strickland v. Thaler*, the Court will address each of these claims.

### A.  Ineffective Assistance of Counsel

For the reasons provided below, Cadriel fails to show that his counsel provided ineffective assistance of counsel. To prevail on an ineffective assistance claim, the petitioner must show that (1) his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense," and shows "errors so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts need not address both inquiries if the defendant does not sufficiently support one prong, nor must the court address the test in the same order. *Id.* at 697. Under this standard, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 687.

Here, Cadriel fails to show that his counsel provided representation below an objective standard of reasonableness and fails to show how any purportedly deficient representation prejudiced the defense.  Accordingly, all of his ineffective assistance of counsel claims should be dismissed.

**(1)  Failure to hire a ballistics expert**

Cadriel has failed to demonstrate that Perez's decision to not retain a ballistics expert constitutes ineffective assistance of counsel.  Cadriel claims Perez acted unreasonably by not retaining a ballistics expert to challenge the methodology and conclusions of the State's ballistics expert. Dkt. No. 78 at 3, 12-16.  In support thereof, Cadriel asserts that Perez failed to advise him that the "reliability and science of tool-mark and forensic ballistic examination was the subject of controversy." *Id*. at 14.  Cadriel further asserts that Perez failed to notify him of "the risk attending a failure to counter the State's forensic ballistics expert[.]" *Id*. at 15.  Finally, Cadriel asserts that Perez rendered constitutionally infirm assistance by not meaningfully challenging the State's argument that its ballistics expert was "99.6 percent certain that the bullet fragment" from the crime scene came from the firearm seized from Cadriel's residence. *Id*.  Thus, Cadriel argues, he did not knowingly and voluntarily waive his right to retain an expert at state expense. *Id*.

However, Cadriel simultaneously admits that he was advised of his right to hire a ballistics expert at state expense and that such an expert "was vital to his defense." *Id*. at 14.  He also admits that the State's ballistics expert conceded at trial, under cross-examination by Perez, that tool mark examination is a subjective field with an error rate of 0.4 percent. *Id*.

In an affidavit, Perez stated that he consulted with a potential ballistics expert, Richard Parent, but Parent concurred with the State's ballistics expert. Dkt. No. 11-52 at 90; Dkt. No. 86-8 at 119-20.   After obtaining Parent's opinion, Perez and Cadriel disagreed on how to proceed.   Dkt. No. 86-9 at 34-35.   Significantly, Perez wanted to continue searching for a helpful expert elsewhere, but Cadriel wanted to forego a ballistics expert.   *Id.*   At a status hearing on August 2, 2013 (hereinafter, the "2013 Status Hearing"), Perez requested that Cadriel state his position for the record, and Cadriel acknowledged the following:

1. Perez had made him aware of the State's ballistics report;

2. Perez had informed him that he had a right to hire a ballistics expert at the State's expense if he could not afford one;

3. Perez had also made Cadriel's adult son and daughter aware of this right;

4. Perez and Cadriel had discussed the issue and Cadriel's options at least two weeks prior to the hearing;

5. Perez had made "numerous visits at the jail" to meet with him;

6. No one was pressuring him to forgo his right to hire an expert;

7. Perez had made him aware that it would be "really hard" to controvert the State's expert opinion if they did not hire an expert of their own; and

8. Cadriel did not want to hire an expert and he was "adamant" and "firm" about this decision.

Dkt. No. 11-13 at 14-21.

Cadriel also impliedly asserts that Perez provided ineffective assistance of counsel by not retaining purported ballistics expert witness, Adina Schwartz, J.D., Ph.D. Specifically, he alleges that he forwarded from Schwartz to Perez a letter favorable to his

defense.  Dkt. No. 78 at 14-15.  Cadriel also argues that he notified Perez that Schwartz might have been able to contest the State's expert's testimony.  *Id.*  Cadriel also notes that Schwartz authored a law review article that favored limiting the admissibility and weight to be accorded the testimony of a state ballistic examiner. *Id.*

Cadriel asserts that "neither the court nor Mr. Perez advised Mr. Cadriel that the reliability and science of tool-mark and forensic ballistic examination was the subject of controversy." *Id.* at 14.  Cadriel cites *United States v. Monteiro, United States v. Glynn, and United States v. Green* for the proposition that the reliability of ballistic examination is controversial.  *Id.* at 14;  *United States v. Monteiro*, 407 F. Supp.2d 351, 355 (D. Mass. 2006); *United States v. Glynn*, 578 F. Supp.2d 567, 569 (S.D. N.Y. 2008);  *United States v. Green*, 405 F. Supp.2d 104, 120-22 (D. Mass. 2005).  However, Cadriel does not specifically assert how these three opinions mandate granting his petition.

Lumpkin argues that Cadriel has not provided proof that an independent defense expert would have testified favorably.  Dkt. No. 88 at 21.  He further argues that the state habeas courts' credibility choices in favor of trial counsel render Perez's affidavit statements presumptively correct under Section 2254.  Dkt. No. 88 at 23.

The state habeas trial court entered, and the TCCA affirmed, the following relevant findings:

> 20.  Based on Parent's oral report to Perez confirming the State's ballistics expert and Applicant's desire to avoid further delay, Perez relied on his trial strategy to proceed to trial without any ballistics expert who would likely confirm the State's expert.
> 21.  Counsel's assertions as to what an expert would testify to is clearly speculative and without evidentiary support.  Counsel presented no evidence that Perez unduly influenced or forced Applicant to proceed to trial without the benefit of an expert on his behalf.

Dkt. No. 86-9 at 175.

The United States Court of Appeals for the Fifth Circuit disfavors uncalled witness arguments in support of ineffective assistance claims.  To prevail on such claims, the petitioner must show the following:

> the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense

*Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009).

Here, Perez consulted with a potential ballistics expert, Richard Parent, but Parent concurred with the State's expert. Dkt. No. 86-8 at 119-20.  Thus, Perez did not ask Parent to write a report because it was clear that Parent's opinion would have harmed Cadriel's defense.  *Id.* at 119-20.  As Parent stated that the State's ballistics expert used some atypical procedures, Perez cross-examined the State's expert regarding the use of those procedures at trial, thus eliciting the State's expert's admission that ballistics examination is a subjective field.  *Id.* at 125.

Perez did not provide ineffective assistance of counsel because he acted under the informed instructions of his client. At the August 2013 Status Hearing, Cadriel acknowledged his own informed decision to not retain a ballistics expert. Specifically, he testified that he was "adamant" and "firm" in his decision to forego experts.  Dkt. No. 11-13 at 21.  He also testified that he knew the ballistics report was important and could be provided at no cost, and declined to retain a ballistics expert even after the trial judge described it as a "[f]undamental issue of great importance."  *Id.* at 14-21, 25-26.  Perez acted under the informed instructions of his client, and thus, under *Dowthitt v. Johnson*, acted reasonably in his representation of Cadriel. Further, Perez did not prejudice the defense for foregoing Parent as an expert.

Cadriel identifies a purported expert witness, Adina Schwartz, J.D., Ph.D., who may have allegedly provided favorable testimony.  However, Cadriel fails to allege, much less demonstrate, that Schwartz was available to testify in his favor or that she would have done so.  Cadriel also fails to set forth the content of Schwartz's proposed testimony or demonstrate that such testimony would have bolstered any of his defenses.

Rather, Cadriel alleges that he "forwarded a letter from" from Schwartz to Perez, which he implicitly argues would have supported his defenses with respect to the State's ballistics expert's testimony.   Cadriel does not allege whether he was in direct contact with Schwartz or whether the "letter" was actually a 2005 law review article[5] written by Schwartz.  Dkt. 78 at 14-15.  Significantly, whether the alleged letter was sent by Schwartz to Cadriel or was actually the 2005 law review article, Cadriel fails to identify the contents of the writing, show how its contents would have bolstered his defenses, show that its contents would have matched Schwartz's testimony, show that Schwartz was available to testify, or show that Schwartz was willing to testify.

Cadriel's cites no binding authority supporting his implied assertion that the trial judge or Perez should have notified him that the reliability and science of tool-mark examination was controversial.  Further, although the courts in *Monteiro*, *Glynn*, and *Green* held that ballistics examination lacks the rigor of science, all three nonetheless admitted ballistics expert testimony.  *Monteiro*, 407 F.Supp.2d at 372 (allowing a ballistics expert to testify that a "cartridge case matches a particular firearm to a reasonable degree of ballistic certainty"); *Glynn*, 578 F.Supp.2d at 575 (allowing ballistics

---

[5] Cadriel implies that the following article could have bolstered his defenses, but neither explicitly states as such nor asserts that the article is the "letter" allegedly forwarded by Cadriel to Perez: Adina Schwartz, *A Systemic Challenge to the Reliability and Admissibility of Firearms and Toolmark Identification*, 6 SCIENCE AND TECHNOLOGY LAW REVIEW 1 (2005).

expert to testify that a match between a firearm and bullet casing is "more likely than not"); *Green*,  405 F.Supp.2d at 124 (allowing ballistics expert to testify "with limitations" because as "a seasoned observer of firearms[,]" the expert "may be able to identify marks that a lay observer would not").

Moreover, in *Williams v. State*, the TCCA found that a state ballistics expert had demonstrated that "the theory of firearm and toolmark identification and the technique of microscopic firearm and toolmark comparison are accepted as valid by the relevant scientific community[, and] literature exists supporting the underlying theory and technique[.]" *Williams v. State*, No. AP-77,053, 2017 WL 4946865, at *22 (Tex. Crim. App. Nov. 1, 2017); *see also  Ramey v. State*, No. AP-75,678, 2009 WL 335276, at *8-9 (Tex. Crim. App. Feb. 11, 2009) ("the appellant tries to object to the expert's conclusions by claiming his methodology is not generally accepted, his argument fails"). Significantly, that Perez elicited the State's ballistics expert's admission that his field was subjective shows that Perez acted within an objective standard of reasonableness.

Based on the AEDPA's highly deferential standard, the state habeas trial court's denial of this claim, the TCCA's affirmation of same, and the above analysis, Cadriel has not met his burden to show that the state courts lacked a reasonable basis to deny relief. Moreover, Cadriel has not shown that Perez's representation fell below an objective standard of reasonableness or that any deficient representation prejudiced his defense. Therefore, this ineffective assistance claim fails.

### (2)  Failure to investigate inconsistent inventory lists

Cadriel fails to demonstrate that Perez acted unreasonably with respect to his review of the three inventory lists, which contain items seized from Cadriel's residence and the crime scene.  Cadriel claims Perez provided him with ineffective assistance when

he failed "to review and exploit the haphazardly prepared and returned inventory lists submitted upon execution of the warrant." Dkt. No. 78 at 16.  In particular, he argues that Perez should have forced the State to provide the complete chain of custody for the murder weapon.  Dkt. No. 76-1 at 3-4; Dkt. No. 78 at 16.  Cadriel also argues that Perez should have investigated his contention that law enforcement seized $40,000 from his residence, but failed to record same in the inventory lists.  Dkt. No. 78 at 17.  He further argues that an effective trial counsel would have investigated the purported discrepancies among the three inventory lists to bolster the defense.  *Id.* at 16-17.  Specifically, Cadriel alleges the following discrepancies:

1. The first inventory list notes a serial number adjacent to the murder weapon that does not match the serial number of the murder weapon noted on the second and third lists;

2. The first inventory list lacks a signature;

3. None of the inventory lists note the existence or seizure of $40,000 that Cadriel alleges he kept at his residence;

4. The first inventory list notes the seizure of a $30,000 check that the second and third lists omit;

5. The third inventory list does not note the seized cell phones;

6. The third inventory list notes that law enforcement seized a bullet from the crime scene two days after initially processing the scene;

7. The third inventory list notes that law enforcement seized a Corona beer bottle from the crime scene with blood five days after initially processing the scene; and

8.  The third inventory list notes that law enforcement seized a hair strand attached to the murder weapon five days after[6] initially processing the scene.

Dkt. No. 76-1 at 3.

Lumpkin argues that Cadriel cannot overcome the state habeas court determination that trial counsel could not have successfully excluded evidence of the murder weapon on chain of custody grounds.  Dkt. No. 88 at 27.  He also argues that Cadriel fails to suggest how Perez's alleged deficiencies in attacking the inventory discrepancies ultimately affected the trial outcome.  *Id.*

The state habeas trial court entered, and the TCCA affirmed, the following relevant findings:

> 23.  Applicant alleges that $40,000.00 in cash was seized from his residence but was not listed in the inventory of the items seized.  Other than his word, Applicant failed to present any evidence that he ever had that cash at his residence or how it was connected to his defense.
> 24.  Applicant complains that the serial numbers of some of the weapons taken from his residence were not listed in the inventory.  Applicant did not show how that failure denied him a fair trial.
> 25.  Applicant complains that the officers failed to follow "standard procedure" regarding Applicant's refusal to sign the inventory.  However, Applicant failed to produce any evidence about such "standard procedure" or how it adversely affected his right to a fair trial.
> 26.  Applicant also complains of "other oddities" on the Lab Submission Inventory List.  But, Applicant failed to show how those oddities affect his right to a fair trial.
> 27.  Applicant also complains that Perez did not examine the chain of custody of the alleged murder weapon.  Applicant's counsel did not question Perez about the chain of custody at the evidentiary hearing.  Applicant failed to show how such failure adversely affected Applicant's right to a fair trial.

Dkt. No. 86-9 at 176.

---

[6] Cadriel alleges that the third list indicates that law enforcement recovered a strand of hair attached to the murder weapon on April 5, 2011, which is approximately one year before the items were recovered in April 2012. The notation "April 5, 2011" is almost certainly a typographical error and should be "April 5, 2012." Importantly, Cadriel fails to show how such a discrepancy would have changed the trial outcome.

"[T]he failure to provide a copy of . . . an inventory . . . does not require suppression of evidence absent a showing of prejudice[.]" *Greene v. State*, 358 S.W.3d 752, 758-59 (Tex. App.—Fort Worth 2011, pet. ref'd) (internal citations omitted).   Further, a habeas "petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).  Thus, Cadriel must show how the inventory list irregularities prejudiced his defense.

His claim concerning the recording of the murder weapon's serial number is misleading and unsupported by the record.  The serial number on the handwritten form does not appear alongside the murder weapon's entry but next to a different gun seized at Cadriel's home.  Dkt. No. 11-46 at 27-29.  The nearly illegible number also closely matches the serial number of the gun it actually appears beside on the other forms (A-17698 and SA-19698).  *Id*.  The officer who seized the pistol from Cadriel's home and the State's ballistics expert both appeared at the trial and verified the murder weapon was found in Cadriel's home.  Dkt. No. 11-19 at 11-12; Dkt. No. 11-21 at 147-150.  Cadriel fails to show how investigation into the serial numbers could have altered the outcome of his case.  He also fails to show that Perez acted unreasonably in his conduct concerning serial numbers or how the recording of the murder weapon's serial number prejudiced him.

Cadriel's argument regarding the missing signature on the first inventory list neither satisfies his burden to show that Perez acted unreasonably nor shows how such an omission prejudiced the defense.  This argument fails because the absence of a signature on the first inventory sheet is immaterial without a showing of prejudice.

Cadriel next alleges a constitutionally sufficient attorney would have investigated the disappearance of his $40,000 in cash.  At the 2019 Evidentiary Hearing, Perez stated

that introducing testimony regarding the alleged disappearance of $40,000 in cash would have caused the jury to think the defense was attempting a callous smoke screen.  Dkt. No. 11-52 at 93; Dkt. No. 86-9 at 11-13.  Significantly, Perez also expressed concern that alleging the existence of $40,000 in cash at Cadriel's residence would have prejudiced the defense because it would have caused jury to think that Cadriel worked as a drug dealer. Dkt. No. 86-9 at 12-13.  Significantly, Cadriel has produced no evidence showing that the purported cash existed.  Thus, Cadriel has neither shown that Perez acted unreasonable nor that any of his actions prejudiced the defense.

Regarding Cadriel's allegations that the second and third lists omit the $30,000 check and that the third list omits the seized cell phones, Cadriel has not specifically asserted how such purported irregularities would have changed the trial outcome. Regarding Cadriel's allegations that law enforcement seized a bullet two days after initially processing the scene, seized a beer bottle with blood five days after initially processing the scene, and seized a hair strand five days after initially processing the scene, he has not shown how Perez's use of this allegedly late-processed evidence would have changed the trial outcome.

Based on the AEDPA's highly deferential standard, the state habeas trial court's denial of this claim, the TCCA's affirmation of same, and the above analysis, Cadriel has not met his burden to show that the state courts lacked a reasonable basis to deny relief. Moreover, Cadriel has not shown that Perez's representation fell below an objective standard of reasonableness or that any deficient representation prejudiced his defense. Therefore, this ineffective assistance claim fails.

### (3)  Failure to secure an adequate judicial inquiry into competence

Cadriel fails to demonstrate that Perez acted unreasonably with respect to the trial court's investigation into Cadriel's competence.  Cadriel argues Perez failed to secure an adequate judicial inquiry into his competence and that he was uninformed of the separate defense of diminished capacity when he declined a psychological examination.  Dkt. No. 76-1 at 4, 19; Dkt. No. 78 at 17-20.[7]  Specifically, he argues that his PTSD, bipolar disorder, and actions at the 2013 Status Hearing show his incompetency.  Dkt. No. 76-1 at 4-5; Dkt. No. 78 at 17-19.

Perez considered competency and diminished capacity to be possible defenses based on Cadriel's PTSD and bipolar disorder.  Dkt. No. 11-13 at 15-18.  However, at the 2013 Status Hearing, Cadriel admitted the following:

1.  He was aware he "could conceivably, for one, raise some type of defensive issue along the line of an insanity defense or diminished capacity defense";

2.  Perez had informed him of these opportunities;

3.  He had had at least two weeks to consider the defenses;

4.  He did not want to raise any of those defenses;

5.  He made that decision freely and voluntarily;

6.  No one pressured or threatened him into that decision; and

7.  He was aware the State was required to pay for his experts on the subject if he was found indigent.

Dkt. No. 11-13 at 15-18.

---

[7] Cadriel also alleges, pro se, constitutionally inadequate conduct by the judge at the 2013 Status Hearing.  Dkt. No. 76-1 at 5.  This claim fails for the same reasons  as the claim concerning Perez's actions.  *See United States v. Risovi*, 826 F. App'x 369, 372 (5th Cir. 2020) (applying the same standard to a counsel as was applied to a judge).

Lumpkin makes the same argument with respect to Cadriel's third and fourth claims. He argues that Cadriel's decision to forego an expert does not constitute evidence that he was unable to participate meaningfully in his defense. Dkt. No. 88 at 30. He also argues that Perez's conference with Cadriel at the time of his in-court decision to proceed to trial without experts constitutes evidence of competence. Dkt. No. 88 at 30. He also argues that Cadriel fails to demonstrate that there was a reasonable probability that, but for trial counsel's errors, the trial court would have found him to be incompetent. Dkt. No. 88 at 29.

The state habeas trial court entered, and the TCCA affirmed, the following relevant findings:

> Habeas Counsel offered no evidence or pointed to anything in the record suggesting that Applicant was not competent to stand trial. Habeas Counsel's opinions on Applicant's competency or incompetency are not supported from the record.

Dkt. No. 86-9 at 176.

*Strickland v. Washington* governs ineffective assistance claims concerning investigation into competency. *Austin v. Davis*, 876 F.3d 757, 785 (5th Cir. 2017). In this context, "'[t]rial counsel provides deficient performance if he fails to investigate a defendant's medical history when he has reason to believe that the defendant suffers from mental health problems.'" *Id.* (quoting *Roberts v. Dretke*, 381 F.3d 491, 498 (5th Cir. 2004)). Only circumstances strongly indicating incompetence constitutionally require a competency evaluation. *See United States v. Risovi*, 826 F. App'x 369, 372 (5th Cir. 2020) ("an apparent suicide attempt, even shortly before a hearing, and even when combined with certain other conditions, does not create a need for a competency evaluation.").

The Court must consider the reasonableness of a counsel's actions from his perspective at the time of the conduct. *Strickland*, 466 U.S. at 691 (decision "assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments"). "A defendant is competent to stand trial if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and if he has a rational as well as factual understanding of the proceedings against him." *Austin v. Davis*, 876 F.3d at 777 (internal quotations omitted). This finding is also one of fact. *Id.* Further, "counsel's belief that the defendant's decision is ill-advised is not sufficient to trigger a duty to inquire into the defendant's competence." *Wood v. Quarterman*, 491 F.3d 196, 204-05 (5th Cir. 2007).

Cadriel argues his PTSD, bipolar disorder, and his actions at the 2013 Status Hearing show his incompetency. Dkt. No. 76-1 at 4-5; Dkt. No. 78 at 17-19. However, his PTSD and bipolar disorder did not necessitate a competency inquiry. *See United States v. Fields*, 761 F.3d 443, 468-69 (5th Cir. 2014), *as revised* (Sept. 2, 2014) (PTSD and "potentially having bipolar disorder" did not make competence to waive counsel debatable). Cadriel only references his medical history and does not show how his afflictions altered his understanding of the proceedings. Cadriel fails to show he was incompetent and therefore fails to show prejudice.

Regarding the defense of diminished capacity, Cadriel explicitly disavowed diminished capacity and "any type of mental defense." Dkt. No. 11-13 at 18; *Wood v. Quarterman*, 491 F.3d at 204-05 (a defendant who is competent to stand trial is competent to override his counsel's advice). In *Wood v. Quarterman*, the court found the petitioner to be competent and found his counsel to have acted reasonably by not

presenting certain evidence as instructed by his client. *Wood*, 491 F.3d at 204-05. Thus, here, the Court finds that Perez acted reasonably.

Regarding his actions at the 2013 Status Hearing, Cadriel argues that his "suicidal decision to [not raise competency defenses in order to] get it over with" constitutes evidence of his incompetency and necessitated an investigation into his competence. Dkt. No. 76-1 at 4 (internal quotations omitted). However, Cadriel explicitly disavowed diminished capacity and "any type of mental defense." Dkt. No. 11-13 at 18. Cadriel's decision to overrule Perez is analogous to the *Wood* petitioner's decision to overrule his counsel. *Wood*, 491 F.3d at 204-05. As the *Wood* court found the petitioner's counsel to have acted reasonably by following his client's instructions, here, the Court finds that Perez also acted reasonably by adhering to Cadriel's instructions. *Id.*

Moreover, Cadriel has not shown that his "decision to get it over with" was not simply an ill-advised decision. Thus, under *Wood*, any belief by Perez that Cadriel's decision was ill-advised was insufficient to trigger a duty to inquire into Cadriel's competence. 491 F.3d at 204-05. Thus, Perez acted reasonably with respect to Cadriel's competence.

Cadriel's behavior before and throughout the trial indicates he was competent to stand trial. From Perez's perspective, Cadriel always asked appropriate questions, gave appropriate responses to his questions, and was competent and capable to assist in his defense. Dkt. No. 86-9 at 16-17. Perez even alleges that Cadriel "constantly" wrote and passed him questions to ask during the trial and that Cadriel "was following along and he was paying attention." *Id.* Significantly, at the 2013 Status Hearing, Cadriel admitted that he could conceivably raise an insanity or diminished capacity defense, that Perez had informed him of these opportunities, that he had at least two weeks to consider such

defenses, that the State would pay for expert testimony supporting such defenses, and that he freely decided to not raise such defenses.  Dkt. No. 11-13 at 15-18.

Based on the AEDPA's highly deferential standard, the state habeas trial court's denial of this claim, the TCCA's affirmation of same, and the above analysis, Cadriel has not met his burden to show that the state courts lacked a reasonable basis to deny relief. Moreover, Cadriel has not shown that Perez's representation fell below an objective standard of reasonableness or that any deficient representation prejudiced his defense. Therefore, this ineffective assistance claim fails.

### (4)    Failure to provide trial judge with an adequate explanation for Cadriel's decision to forego expert witnesses

Cadriel fails to show how Perez acted unreasonably regarding explanations provided to the trial judge with respect to the retention of experts.  At the 2013 Status Hearing, Cadriel referenced, without explicitly stating, the three reasons in the following testimony to the state habeas trial court:

| | |
|---|---|
| **Court:** | [Perez] has suggested here, as he was asking you questions and you answering the questions, "Look, Mr. Cadriel, if money is going to be an issue, do not let that be your overriding concern, we will press the Court and ask the Court to have the State underwrite the expense," because those -- that analysis is at considerable expense. But he says, "Don't let that be the reason you would say, no, I don't want to chase that issue," because he will -- he says, "I'm prepared to ask the Court to have those underwritten by the State." |
| **Cadriel:** | Yes, ma'am. |
| **Court:** | Do you understand that? |
| **Cadriel:** | Yes, ma'am. |
| **Court:** | So that financial money ought not to be -- |
| **Cadriel:** | It's just more than financial, Your Honor. |
| **Court:** | Okay. |
| **Cadriel:** | There are about three issues pertaining to that. |
| **Court:** | I'll let that -- |
| **Cadriel:** | I want to just move on. |
| **Court:** | Okay. I'll let you discuss those matters with Mr. Perez. I don't think those are matters for me to take up . . . . |

Dkt. No. 11-13 at 25-26.  Subsequently, Cadriel and Perez discussed the three reasons off the record.  *Id.* at 26-28.  Perez did not recall the exact reasons discussed between himself and Cadriel in the 2013 off-the-record discussion.  Dkt. No. 11-52 at 93-94; Dkt. No. 86-9 at 30-32.  Regardless, after the off-the-record discussion, Cadriel remained firm in his decision to not retain experts. Dkt. No. 11-13 at 26-28.

As noted above, Cadriel admitted the following to the state trial court:

1. He was aware he "could conceivably, for one, raise some type of defensive issue along the line of an insanity defense or diminished capacity defense";
2. Perez had informed him of these opportunities;
3. He had had at least two weeks to consider the defenses;
4. He did not want to raise any of those defenses;
5. He made that decision freely and voluntarily;
6. No one pressured or threatened him into that decision; and
7. He was aware the State was required to pay for his experts on the subject if he was found indigent.

Dkt. No. 11-13 at 15-18.  At the 2019 Evidentiary Hearing, Cadriel himself testified that the three reasons he wanted to forego experts were as follows:

1. Cadriel "could not afford, you know, individuals of that kind [(ballistics experts)]";
2. Cadriel "did not have the money to hire the -- somebody of that kind of psychiatrist"; and
3. "[A]ll [Cadriel] had to do . . . [the Court] . . . would very much go along if I was to tell her I was crazy."

Dkt. No. 86-9 at 69-72.  Regarding the somewhat unclear third reason, Cadriel likely attempted to testify that he did not need to retain experts to mount a successful defense; rather, he merely had to convince the trial judge that he was incompetent based on his own testimony rather than based on the opinion of an expert.

Lumpkin makes the same argument with respect to Cadriel's third and fourth claims.  He argues that Cadriel's decision to forego an expert does not constitute evidence of incompetence, i.e., that he was unable to participate meaningfully in his defense.  Dkt.

No. 88 at 30.  He also argues that Perez's conference with Cadriel at the time of his in-court decision to proceed to trial without experts constitutes evidence of competence. Dkt. No. 88 at 30.  He also argues that Cadriel has failed to demonstrate that there was a reasonable probability that, but for trial counsel's errors, the trial court would have found him to be incompetent.  Dkt. No. 88 at 29.  The state habeas trial court entered, and the TCCA affirmed, the following relevant findings:

> [o]ther than allowing Applicant and Perez to confer privately about whether to proceed to trial and getting an expert, counsel cites no facts or evidence to support his contentions.  His claims are purely speculative.

Dkt. No. 86-9 at 176.

A habeas "petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial".  *Miller v. Dretke*, 420 F.3d at 361. Thus, Cadriel must show how a full investigation into the three reasons would have altered the outcome of his case.

However, considering the direct discussion regarding the retention of experts between Cadriel and the trial judge, Cadriel fails to allege any facts: (1) showing that Perez acted unreasonably; or (2) showing that Perez's actions prejudiced the defense. Cadriel's claim is speculative and does not meet the burden set in *Miller v. Drekte*.  Based on the AEDPA's highly deferential standard, the state habeas trial court's denial of this claim, the TCCA's affirmation of same, and the above analysis, Cadriel has not met his burden to show that the state courts lacked a reasonable basis to deny relief.  Moreover, Cadriel has not shown that Perez's representation fell below an objective standard of reasonableness or that any deficient representation prejudiced his defense.  Therefore, this ineffective assistance claim fails.

**(5)    Failure to conduct an adequate investigation into the facts and circumstances underlying the offense**

Cadriel's ineffective assistance claim based on Perez's alleged failure to conduct an adequate investigation into the facts fails.  In his memorandum, Cadriel points to several facets of Perez's investigation which he argues are deficient.  Cadriel alleges Perez relied too heavily on the State's reports without interviewing witnesses or bringing evidence of Cadriel's trysts with other women.  Cadriel also alleges Perez's inadequate investigation failed to uncover the following:

1. Cadriel did not own a cell phone;

2. Jacob Vento was the most likely killer, and he probably had the victim's cell phone;

3. Jacob Vento had information regarding the victim's involvement in drug and gun trafficking;

4. The owner of the Hudson Houston hotel, Alka Bhakta, unwittingly signed a false affidavit because she could not read or write English;

5. Cadriel had returned his key to the hotel room and checked out before the alleged confrontation in the parking lot, according to Bhakta; and

6. Cadriel did not own a firearm matching the murder weapon, and his family would have confirmed this.

Dkt. No. 76-1 at 6.

Lumpkin argues that Cadriel's son's trial testimony and Cadriel's state habeas testimony regarding Tracphones controvert Cadriel's argument that he did not own a cell phone.  Dkt. No. 88 at 35-36.  Lumpkin argues that the record thus reflects that Perez could not have conclusively shown that Cadriel did not possess a cell phone at the time of

the offense.  *Id.* at 36.  He also argues that Cadriel's contention that the victim was involved in gun and drug sales was conclusory. *Id.* He also argues that Cadriel has not demonstrated that Perez could have elicited more favorable testimony from the hotel manager witness, Alka Bhakta.  *Id.*

The state habeas trial court entered, and the TCCA affirmed, the following relevant findings:

> 35.  First, counsel alleges that Perez did not investigate whether the cell phone number that the State relied on was Applicant's number.  Counsel stated that Applicant did not have a cell phone and did not use a cell phone.  However, Applicant testified at the evidentiary hearing that he had used a Tracphone.  He explained that the difference between a cell phone and a Tracphone is that a Tracphone has a limited range of about 100 miles, while a cell phone is not limited.  Counsel's assertion that Applicant did not have or use a cell phone is contradicted by Applicant's own testimony.
>
> 36.  Counsel also alleges that Perez did not contact the witness Alka Bhakta prior to trial.  Bhakta was the owner of the hotel were Applicant and the victim would get together every so often.  Bhakta is a native of India; her husband had died recently.  She testified that she signed a written statement prepared by police, even though she could not write or read English.  Perez testified that he brought to the jury's attention that Bhakta could not read nor write English, and that she signed the statement written by the police and that the officer told her where to sign.  Perez attacked her credibility through her inability to understand English.
>
> 37.  Counsel questioned Perez the number of times he visited with Applicant prior to trial.  Applicant testified at the hearing that Perez had visited him only three times for less than 15 minutes, whereas Perez testified he had had about 15 to 20 times.  Based on the totality of the evidence presented, credibility lies with Perez.
>
> 38.  Applicant testified that Brisna, the victim, was involved in drug trafficking.  Applicant provided no evidence to support his claim or that failure to present such evidence adversely affected him.

Dkt. No. 86-9 at 177.

A habeas petitioner "must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial[.]" *Miller v. Dretke*, 420 F.3d at 361.  Here, Cadriel has not shown that Perez's investigation prejudiced him. Cadriel cannot credibly claim that he lacked a cell phone because law enforcement seized

three phones from his residence.  Dkt. No. 11-46 at 28.  Also, law enforcement associated a phone number with him that was pinging off of cell towers in Harlingen, Texas after 4:00 A.M. on the morning of the murder.  Dkt. No. 11-18 at 204.  Cadriel argues that he did not have a cell phone, but admits he had Tracfones, which are phones meant to be operated within short distances.  Dkt. No. 86-9 at 100-01, 105-06.  Significantly, Cadriel refers to these phones as "cell phones" at the 2019 Evidentiary Hearing.  *Id.* at 105-06. His son also admitted to having access to Cadriel's "cell phone" at trial.  Dkt. No. 11-23 at 70.  Thus, Cadriel fails to show prejudice on this issue or that Perez investigated Cadriel's cell phones or Tracfones unreasonably.

Cadriel alleges Perez failed to investigate several material facts concerning Vento. Dkt. No. 76-1 at 5-6.  However, the record only supports some of the allegations, and Perez's cross-examination of Vento involves the material facts.  Dkt. No. 11-22 at 72-79; Dkt. No. 76-1 at 5-6.  Cadriel's allegation that Perez failed to "bring to the jury's attention [the victim's] involvement in drug and gun trafficking" is incorrect because Vento testified at trial that he heard the victim discuss a gun exchange, thus implying that the victim was allegedly involved in gun trafficking.  Dkt. No. 76-1 at 6; Dkt. No. 11-22 at 73.  Moreover, Cadriel has produced no evidence that the victim's alleged drug and gun trafficking would have altered the trial outcome.

Cadriel alleges several important facts concerning the knowledge of Bhakta, but those facts were all contained in her cross-examination before the jury with one exception. Dkt. No. 76-1 at 6; Dkt. No. 11-21 at 199-206.  The lone exception is the claim that Cadriel checked out before the confrontation in the parking lot.  Dkt. No. 76-1 at 6; Dkt. No. 11-21 at 199-206.  However, Bhakta flatly denied at trial having seen him after renting him the room for the night.  Dkt. No. 11-21 at 206-07.  Cadriel has not shown how a different

investigation into Bhakta could have brought new and material evidence before the jury or changed the trial outcome.

Cadriel argues "there is no evidence that the firearm the state claims the perpetrator used to commit the crime belonged" to him. Dkt. No. 76-1 at 6. He further asserts that Perez would have discovered this fact if Perez had spoken to Cadriel's family about the matter. *Id.* However, at trial, the State showed that the pistol from Cadriel's closet matched the bullet from the scene. Dkt. No. 11-19 at 11-12; Dkt. No. 11-21 at 148-53. Cadriel has not shown how a different investigation could have disproven this.

Finally, regarding the "trysts" that Cadriel alleges Perez should have brought before the jury, Cadriel has not named and demonstrated the testimony of any of such women or how Perez could have tracked them down. Cadriel has not carried his burden of showing prejudice or that Perez acted unreasonably based on these or any other allegations.

Based on the AEDPA's highly deferential standard, the state habeas trial court's denial of this claim, the TCCA's affirmation of same, and the above analysis, Cadriel has not met his burden to show that the state courts lacked a reasonable basis to deny relief. Moreover, Cadriel has not shown that Perez's representation fell below an objective standard of reasonableness or that any deficient representation prejudiced his defense. Therefore, this ineffective assistance claim fails.

## B. Actual Innocence

The Court does not consider Cadriel's actual innocence claim because it is not a cognizable claim. Cadriel asserts, pro se, that he did not murder the victim. Dkt. No. 78 at 23. Neither the state habeas trial court nor the TCCA addressed this claim. Dkt. 76-8; Dkt. No. 80-15. However, habeas counsel for Cadriel and Lumpkin agree that actual

innocence is not a recognized ground for federal habeas corpus relief. Dkt. No. 78 at 23-24; Dkt. No. 88 at 39. Habeas counsel for Cadriel concedes that "the claim of actual innocence will not support an independent constitutional basis for habeas relief[.]" Dkt. No. 78 at 23-24.

Lumpkin argues that Cadriel's actual innocence claim is not cognizable because standalone actual innocence claims are not available under federal habeas review standards. Dkt. No. 88 at 39. The state habeas trial court found, and the TCCA affirmed, that Cadriel's actual innocence claim is unsupported by the factual record of the case and that Cadriel failed to present any evidence supporting his actual innocence. Dkt. No. 76-8 at 6.

The parties are correct that actual innocence is not a recognized ground for federal habeas relief. *Dowthitt*, 230 F.3d at 741 ("'Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'") (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *United States v. Fields*, 761 F.3d 443, 479 (5th Cir. 2014), *as revised* (Sept. 2, 2014) (same). Thus, the Court does not consider Cadriel's actual innocence claim because such claim is not cognizable.

## C. Prosecutorial Misconduct

Cadriel asserts, pro se, that his trial was unfair because the State claimed Cadriel was a "monster" and "the face of pure evil" in its closing argument. Dkt. No. 76-1 at 7; Dkt. No. 78 at 24. Neither the state habeas trial court nor the TCCA addressed this claim. Dkt. 76-8; Dkt. No. 80-15. Habeas counsel for Cadriel concedes that the "record will not support such a finding" that the closing "argument so infected the proceeding as to rise to

a denial of due process." Dkt. No. 78 at 24.  Lumpkin argues that Cadriel's prosecutorial misconduct claim is conclusory and that Cadriel has not demonstrated that the TCCA's denial of such claim was objectively unreasonable.  Dkt. No. 88 at 40.

Federal habeas petitions may be denied on the merits regardless of the failure of the applicant to exhaust the remedies available in the courts of the State.  28 U.S.C. Section 2254(b)(2); *Strickland*, 701 F.3d 171, 174 (5th Cir. 2012).  Moreover, a federal district court may deny an unexhausted claim so long as the claim obviously lacks merit. *Mercadel v. Cain*, 179 F.3d 271, 276 (5th Cir. 1999).  Cadriel's prosecutorial misconduct claim should be denied on the merits regardless of his failure to exhaust state remedies because this claim clearly lacks merit, as more fully set forth below.

"[P]rosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *Trottie v. Stephens*, 720 F.3d 231, 253 (5th Cir. 2013) (internal quotations omitted).  Cadriel's allegations regarding the State's characterization of him would not have had a pronounced effect on the jury in comparison with the general accusation of murder consistent throughout the trial.  Dkt. No. 76-1 at 7; Dkt. No. 78 at 24.  *See Rosales v. Dir.*, TDCJ-CID, No. 4:16CV530, 2021 WL 2006481, at *9 (E.D. Tex. Feb. 10, 2021), *report and recommendation adopted*, No. 4:16CV530, 2021 WL 1998781 (E.D. Tex. May 19, 2021) (calling the defendant a "monster" did not deprive him of a fair trial); *see also Bible v. Stephens*, No. 4:13-CV-200, 2014 WL 5500722, at *30 (S.D. Tex. Oct. 30, 2014) (telling the jurors the defendant was "evil" and "deserved to die" did not deprive the defendant of a fair trial); *see also Malicoat v. Mullin*, 426 F.3d 1241, 1256 (10th Cir. 2005) (statements that the Defendant was "evil" and a "monster" did not warrant habeas relief).  Despite the prosecution's use of "monster" and "evil" to describe

Cadriel, Cadriel's position is materially indistinguishable from that of the petitioners in *Rosales* and *Bible*.

Based on the AEDPA's highly deferential standard and the above analysis, this claim clearly lacks merit, and Cadriel has not met his burden to show that the state courts lacked a reasonable basis to deny relief.  Thus, his prosecutorial misconduct claim fails.

### D.  Unreasonable Force in the Search of Cadriel's Residence

The Court does not consider Cadriel's unreasonable search claim because it is not cognizable.  Cadriel asserts, pro se, that law enforcement used unreasonable force in the search of his residence.  Dkt. No. 76-1 at 7.  Neither the state habeas trial court nor the TCCA addressed this claim.  Dkt. 76-8; Dkt. No. 80-15.  Habeas counsel for Cadriel concedes that the record does not support this claim.  Dkt. No. 78 at 24-25.  Lumpkin argues that Cadriel's unreasonable search claim is not cognizable because he has failed to show that the State denied him the opportunity to litigate this claim.  Dkt. No. 88 at 41.

"Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976).  The Fifth Circuit has interpreted an opportunity for full and fair litigation to mean "an opportunity . . . whether or not the defendant employs those processes." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (internal quotations omitted).

Cadriel's unreasonable search claim is not cognizable.  He provides neither factual background nor legal argument showing that the State did not provide an opportunity for full litigation of this claim in accordance with *Stone*.  Thus, regardless of Cadriel's failure

to bring this claim in the state habeas proceeding, the Court does not consider Cadriel's unreasonable search claim because such claim is not cognizable.

### E.  Unreasonable Force in the Seizure of Cadriel's Person

Likewise, the Court does not consider Cadriel's unreasonable seizure claim because it is not cognizable.  Cadriel asserts, pro se, that law enforcement used unreasonable force in the search of his residence.  Dkt. No. 76-1 at 7.  Neither the state habeas trial court nor the TCCA addressed this claim.  Dkt. No. 76-8; Dkt. No. 80-15.  Habeas counsel for Cadriel concedes that the record does not support this claim.  Dkt. No. 78 at 24-25.  Lumpkin argues that Cadriel's unreasonable search claim is not cognizable because he has failed to show that the State denied him the opportunity to litigate this claim.  Dkt. No. 88 at 41.

As noted above, "[w]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976).  The Fifth Circuit has interpreted an opportunity for full and fair litigation to mean "an opportunity . . . whether or not the defendant employs those processes."  *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (internal quotations omitted). Cadriel's unreasonable seizure claim is not cognizable.  He provides neither factual background nor legal argument showing that the State did not provide an opportunity for full litigation of this claim in accordance with *Stone*.  Thus, regardless of Cadriel's failure to bring this claim in the state habeas proceeding, the Court does not consider Cadriel's unreasonable seizure claim because such claim is not cognizable.

### F.  Miranda Admonishment

Cadriel asserts, pro se, that law enforcement interrogated him without admonishing him of his *Miranda* rights.  Dkt. No. 76-1 at 7.  Neither the state habeas trial court nor the TCCA addressed this claim.  Dkt. 76-8; Dkt. No. 80-15.  Habeas counsel for Cadriel likewise does not address this claim in his memorandum of law.  Dkt. No. 78.  Lumpkin argues that Cadriel's Miranda claim is conclusory because he provides neither law nor facts in support thereof.  Dkt. No. 88 at 41-42.

Federal habeas petitions may be denied on the merits regardless of the failure of the applicant to exhaust the remedies available in the courts of the State.  28 U.S.C. Section 2254(b)(2); *Strickland v. Thaler*, 701 F.3d 171, 174 (5th Cir. 2012).  Moreover, a federal district court may deny an unexhausted claim so long as the claim obviously lacks merit.  *Mercadel v. Cain*, 179 F.3d 271, 276 (5th Cir. 1999).  Cadriel's prosecutorial misconduct claim should be denied on the merits regardless of his failure to exhaust state remedies because this claim clearly lacks merit.

Pre-interrogation warnings are required in the context of custodial interrogations as a result of the compulsion inherent in custodial surroundings. *Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004); *Miranda*, 384 U.S. 436, 458 (1966).  Here, the Court finds Cadriel's *Miranda* claim to be conclusory because he provides neither factual background nor legal argument in support of same.  Thus, Cadriel's *Miranda* claim fails.

### V.  Certificate of Appealability

A certificate of appealability shall not issue unless the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Said differently, where claims have been dismissed on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Where claims have been dismissed on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition state a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural hiring." *Id.*

District courts may deny certificates of appealability *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case because Cadriel has not made a substantial showing of the denial of a constitutional right.

## VI.  Recommendation

For the reasons stated above, it is recommended that: (1) Lumpkin's Motion be **GRANTED**; (2) the Court **DECLINE** to issue a certificate of appealability; and (3) the Clerk of Court be **DIRECTED** to **CLOSE** Civil Action No. 1:18-cv-080 and Civil Action No. 1:20-cv-188.

## VII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusion, and recommendation in a Magistrate Judge's Report and Recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district  court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United*

*Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1).

**SIGNED** on this **30th** day of **August, 2021**, at Brownsville, Texas.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**